UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ZUFFA, LLC d/b/a ULTIMATE          )
FIGHTING CHAMPIONSHIP,             )
    Plaintiff,                    )
                         )
         v.                        )  Civil No. 1:17-cv-564
                         )
KHURRAM MALIK, et al.,             )
    Defendants.                   )

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. 16). After a representative for Defendants failed to respond to Plaintiff's motion or to appear at the hearing on September 15, 2017, the undersigned took Plaintiff's motion under advisement.[1]

## I. INTRODUCTION

### A. Background

Plaintiff Zuffa, LLC, ("Plaintiff" or "Zuffa") is a Nevada limited liability company and is the owner of the UFC 205 Broadcast ("UFC Broadcast") that aired on November 12, 2016. (Compl. ¶¶ 5-6.) Defendants are Khurram Malik ("Malik") and Fuzion Café LLC ("Fuzion") (collectively "Defendants"). Fuzion

---

1. The record before the Court includes the Complaint (Dkt. 1) ("Compl."), Plaintiff's Motion for Default Judgment (Dkt. 16) ("Mot. Default J."), the Affidavit of Wm. Hunter Campbell (Dkt. 16-1) ("Campbell Aff."), the Affidavit of Joe Hand, Jr. (Dkt. 16-2) ("Hand Aff."), the Affidavit of Christopher J. Hufnagel (Dkt. 16-3) ("Hufnagel Aff."), Plaintiff's Memorandum of Law in Support of Default Judgment (Dkt. 17) ("Mem. Supp."), and all attachments and exhibits submitted with those filings.

is a Virginia limited liability company doing business at 6400A Commerce Street, in Springfield, Virginia. (Id. ¶¶ 8-11.) Malik is an officer, director, shareholder, principal, manager, or member of Fuzion, receives financial benefit from Fuzion's operations, and has close control over the internal operating and employment practices of Fuzion. (Id. ¶¶ 8, 12-13.)

On May 17, 2017, Plaintiff filed this action against Defendants under the Communications Act of 1934 ("Communications Act"), as amended, 47 U.S.C. §§ 151 et seq., and the Copyright Act of 1976 ("Copyright Act"), as amended, 17 U.S.C. §§ 101 et seq. (Id. ¶ 1.) Plaintiff alleges that Defendants unlawfully intercepted and unlawfully exhibited the UFC Broadcast, therefore violating the Communications Act §§ 633 and 705, 47 U.S.C. §§ 553 and 605. (Id. ¶¶ 18-28, 32-37; Mem. Supp. at 1.) Plaintiff also alleges that Defendants infringed its copyright by exhibiting the UFC Broadcast for commercial gain, therefore violating the Copyright Act § 501, 17 U.S.C. § 501. (Compl. ¶¶ 38-44; Mem. Supp. at 1.) Plaintiff now seeks statutory damages, enhanced damages, and attorneys' fees and costs. (Compl. ¶¶ 30-31, 37, 47; Mot. Default J. at 1-2; Campbell Aff. ¶ 2; Mem. Supp. at 12-24.)

## B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject matter and personal jurisdiction over the

defaulting party.

The Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this dispute arises under the federal legislation of the Communications Act, as amended, 47 U.S.C. §§ 151 et seq., and the Copyright Act, as amended, 17 U.S.C. §§ 101 et seq. (Compl. ¶ 1.)

The Court has personal jurisdiction over Defendants in this case. Fuzion maintains sufficient contacts for personal jurisdiction as a Virginia limited liability company with its principal place of business in Virginia, and by being involved in activities giving rise to this action which took place in Virginia. (Id. ¶¶ 4, 9.) Malik maintains sufficient contacts for personal jurisdiction as a resident of Virginia and by managing Fuzion, which physically operates in Virginia. (Id. ¶¶ 4, 7-10.)

Pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), venue is proper in this judicial district because Defendants reside or may be found in this District. (Id. ¶¶ 2, 9, 12, 14.)

### C. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court for service to be proper. Federal Rule of Civil Procedure 4(e) provides specific ways to properly serve an individual within a judicial district. Both Defendants were properly served in this case.

On June 14, 2017, Plaintiff's private process server

personally affixed a copy of the summons, complaint, civil cover sheet, corporate disclosure statement, and court's notice and report to the front door of Malik's usual place of abode located at 2264 York Drive, Apt. 411, in Woodbridge, Virginia. (Proof Serv. (Dkt. 8).) This process was in accordance with Virginia Rule of Civil Procedure § 8.01-296(2), and therefore service was proper under Federal Rule of Civil Procedure 4(e)(1) with regards to Malik.

On June 19, 2017, Plaintiff's private process server personally served Fuzion's registered agent Afsan Khan at 6400 Commerce Street, Unit A, in Springfield, Virginia, with a copy of the Summons and Amended Complaint and informed him of the contents therein. (Proof Serv. (Dkt. 9).) Therefore, service was proper under Federal Rule of Civil Procedure 4(e)(2)(C) with regards to Fuzion.

### D. Grounds for Default Judgment

Federal Rule of Civil Procedure 55 provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Defendants have not appeared, answered, or otherwise filed any responsive pleadings in this case. On August 21, 2017, U.S. District Judge T. S. Ellis ordered Plaintiff to seek an entry of default. (Order (Dkt. 12).) On August 28, 2017, the Clerk of the Court entered default pursuant to Plaintiff's

4

Request for Entry of Default (Dkt. 13) and Federal Rule of Civil Procedure 55(a). (Entry Default (Dkt. 15).) On September 1, 2017, Plaintiff filed its Motion for Default Judgment (Dkt. 16).

## II. FINDINGS

Based on the Complaint (Dkt. 1), the Motion for Default Judgment (Dkt. 16), the Affidavit of Wm. Hunter Campbell (Dkt. 16-1), the Affidavit of Joe Hand, Jr., (Dkt. 16-2), the Affidavit of Christopher J. Hufnagel (Dkt. 16-3), and Plaintiff's Memorandum of Law in Support of Motion for Default Judgment (Dkt. 17), the undersigned Magistrate Judge makes the following findings.

Plaintiff Zuffa is a Nevada limited liability company with its principal place of business located at 2960 West Sahara Avenue, in Las Vegas, Nevada. (Compl. ¶ 5.) Plaintiff is the owner of the copyright to the UFC Broadcast, which was scheduled for airing via closed circuit television and via encrypted satellite signal on November 12, 2016. (Id. ¶¶ 6, 19; Campbell Aff. ¶ 3.) Plaintiff allowed various commercial establishments in Virginia to lawfully exhibit the UFC Broadcast by providing such establishments a license in exchange for a fee. (Compl. ¶ 21; Campbell Aff. ¶¶ 3-4.) Either Plaintiff or its exclusive commercial distributer, Joe Hand Promotions, Inc., would issue the licenses. (Compl. ¶ 21; Campbell Aff. ¶ 4; Hand Aff. ¶ 3.) Plaintiff and its distributor maintained a list of

establishments that it had authorized to exhibit the UFC Broadcast. (Campbell Aff. ¶ 6; Hand Aff. ¶ 4, Ex. A.) Non-commercial residential or private viewers were able to individually purchase pay-per-view viewing options through Plaintiff or its authorized online platforms. (Compl. ¶ 22.) The individual purchases contained language stating that the "unauthorized reproduction or distribution of the copyrighted work is illegal." (Id. ¶ 23.) The individual purchases were greatly discounted from the prices for commercial exhibition licenses. (Id. ¶ 22.)

Various ways exist for an establishment to exhibit a broadcast, such as the UFC Broadcast, without receiving a license. (Id. ¶ 26; Campbell Aff. ¶ 11.) An establishment may intentionally misrepresent itself as a residential property to purchase a pay-per-view version of a broadcast at a residential price. (Campbell Aff. ¶ 11(a).) An establishment may order a broadcast for its residence and then move its residential receiver to the commercial location. (Id. ¶ 11(b).) An establishment may employ technologies to transfer a broadcast from personal cable, broadband, satellite and similar systems onto computers, and the computers can then exhibit the broadcast at the commercial location. (Id. ¶ 11(c).) An establishment may also stream or share a broadcast via broadband. (Id. ¶ 11(d).)

Defendant Fuzion is a Virginia limited liability company,

and Defendant Malik is an officer, director, shareholder, principal, manager, or member of Fuzion, receives financial benefit from Fuzion's operations, and has close control over the internal operating and employment practices of Fuzion. (Compl. ¶¶ 8-13.) Fuzion maintains a physical establishment at 6400A Commerce Street, in Springfield, Virginia. (Id. ¶¶ 8-11.) The establishment has an estimated capacity of 51-100 people. (Id. ¶ 14; Campbell Aff. ¶ 8, Ex. A.) A license to exhibit the UFC Broadcast at Fuzion would have cost $2,250.00. (Hand Aff. ¶ 6.) Neither Fuzion nor Malik had paid for or received a commercial license from Plaintiff or its distributor. (Campbell Aff. ¶¶ 7, 9; Hand Aff. ¶ 5.) On November 9, 2016, prior to the airing of the UFC Broadcast, Fuzion's Facebook.com page advertised that it would be showing the UFC Broadcast at its establishment. (Campbell Aff. ¶ 10, Ex. D.)

On November 12, 2016, the UFC Broadcast originated via satellite uplink, was re-transmitted to cable systems, and reached satellite companies via satellite signal, thus allowing authorized viewers to receive the UFC Broadcast. (Compl. ¶ 20.) Plaintiff retained independent auditors to canvas and identify establishments that unlawfully exhibited the UFC Broadcast on the night of November 12, 2016. (Campbell Aff. ¶ 5.) Plaintiff provided the auditors with the list of approved establishments that had properly received licenses to exhibit the UFC

Broadcast. (Id. ¶ 6.) Because it did not receive a license, Fuzion was not on the list. (Id. ¶ 7; Hand Aff. ¶ 5.) One auditor visited Fuzion's establishment at 6400A Commerce Street, in Springfield, Virginia, at approximately 10:20 p.m. (Campbell Aff. ¶ 8, Ex. A.) The auditor did not pay a cover charge to enter. (Id. Ex. A.) Once inside, the auditor observed one projector screen exhibiting the UFC Broadcast. (Id. ¶ 8, Exs. A, C.) The auditor took a picture of the outside of Fuzion's establishment and recorded a video of the exhibition of the UFC Broadcast inside the establishment. (Id. ¶ 8; Exs. B-C.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate a plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's claims against the standards of Federal Rule of Civil Procedure 12(b)(6). First, the Court will evaluate Plaintiff's claims under the Communications Act. Second, the Court will evaluate Plaintiff's claim under the Copyright Act.

### A. Communications Act

Plaintiff first alleges unauthorized reception of cable services by Fuzion in violation of 47 U.S.C. § 553 ("Section

8

553"). (Compl. ¶¶ 1, 34-36.) Plaintiff is suing as a "person aggrieved" by a violation of Section 553, which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1); see also id. § 553(c)(1). Plaintiff has sufficiently established that Fuzion intercepted and/or received the interstate cable communication of the UFC Broadcast. (Compl. ¶¶ 24-26; Mem. Supp. at 4.) Additionally, Fuzion did not pay Plaintiff or its distributor for a license to exhibit the UFC Broadcast, and therefore Fuzion was not authorized to receive the UFC Broadcast. (Compl. ¶ 24; Campbell Aff. ¶¶ 7, 9; Hand Aff. ¶ 5; Mem. Supp. at 3.) Furthermore, Plaintiff has established that the closed-circuit UFC Broadcast could not have been intercepted innocently or accidentally. (Compl. ¶ 26; Campbell Aff. ¶ 11.) Therefore, Plaintiff has sufficiently stated a claim under Section 553 against Fuzion.

Plaintiff also alleges unauthorized publication or use of radio and satellite communications by Fuzion in violation of 47 U.S.C. § 605 ("Section 605"). (Compl. ¶¶ 1, 28-29; Mem. Supp. at 12.) Plaintiff is suing as a "person aggrieved" by a violation of Section 605, which defines a "person aggrieved" to include "any person with proprietary rights in the intercepted

communication." 47 U.S.C. § 605(d)(6). Plaintiff owned and maintained proprietary rights in the UFC Broadcast. (Compl. ¶¶ 6, 19; Campbell Aff. ¶ 3; Mem. Supp. at 7.)

Section 605 further provides for the following:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents ... of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate ... communication by radio and use such communication ... for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Satellite communications qualify as radio communications under Section 605. See Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc., 920 F. Supp. 2d 659, 666 (E.D. Va. 2013). Here, Plaintiff has established that Fuzion intercepted, without authorization, the satellite communication of the UFC Broadcast. (Compl. ¶¶ 24-26; Campbell Aff. ¶ 9; Mem. Supp. at 4.) Fuzion then divulged that communication to patrons at its establishment at 6400A Commerce Street, in Springfield, Virginia. (Compl. ¶¶ 24-25; Campbell Aff. ¶ 9; Mem. Supp. at 4.) Therefore, Plaintiff has sufficiently stated a claim under Section 605 against Fuzion.

Plaintiff also seeks to hold Malik individually liable for the unauthorized interception and publication of the UFC Broadcast under Sections 553 and 605. (Compl. ¶¶ 30, 37; Mot. Default J. at 1; Mem. Supp. at 23-24.) The undersigned has not

found, nor has Plaintiff provided, any cases in this District that have held an owner individually liable for his or her business's violations of Section 553 or 605. However, other district courts within the Fourth Circuit have considered such liability under a theory of vicarious liability. See, e.g., Joe Hand Promotions Inc. v. Nichols, No. 2:14-cv-28727, 2017 WL 3216593, at *2 (S.D. W. Va. July 28, 2017); Joe Hand Promotions Inc. v. Harrison, No. 2:14-cv-28688, 2016 WL 6988501, at *2 (S.D. W. Va. Nov. 28, 2016); Joe Hand Promotions, Inc. v. Double Down Entm't, LLC, No. 0:11-cv-02438-MBS, 2014 WL 994382, at *3-4 (D.S.C. Mar. 13, 2014); Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC, No. CCB-11-3272, 2012 WL 5879127, at *2 n.3 (D. Md. Nov. 19, 2012); J & J Sports Prods., Inc. v. MayrealII, LLC, 849 F. Supp. 2d 586, 589 n.5 (D. Md. 2012).

For vicarious liability to exist under Sections 553 and 605, an individual defendant must possess the right and ability to supervise the unauthorized conduct, and the defendant must have an obvious and direct financial interest in the outcome of the unauthorized conduct. See, e.g., Nichols, 2017 WL 3216593, at *2. Here, Plaintiff has established that Malik is responsible for the operation, management, and supervision of Fuzion. (Compl. ¶¶ 8, 11, 13.) Plaintiff has also established by affidavit that the UFC Broadcast was advertised and exhibited to attract customers to Fuzion, presumably increasing its general

11

business and profits. (Campbell Aff. ¶¶ 8, 10, Exs. A, C-D.)
Furthermore, Plaintiff has established that Malik has a direct
financial interest in Fuzion, and therefore a direct financial
interest in the infringing of the UFC Broadcast. (Compl. ¶ 12.)
Consequently, Plaintiff has supported its Section 553 and
Section 605 claims against Malik individually.

## B. Copyright Act

Plaintiff alleges that Fuzion infringed on Plaintiff's
copyrighted property in violation of the Copyright Act, as
amended, 17 U.S.C. §§ 101 et seq. To establish a case of
copyright infringement, plaintiffs must show (1) ownership of
the allegedly infringed material; and (2) that the alleged
infringers violated at least one exclusive right granted to the
copyright holders. See 17 U.S.C. §§ 106, 501(a); see also Feist
Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Here, Plaintiff owns the UFC Broadcast and licenses the
Broadcast for exhibition by others. (Compl. ¶¶ 6, 19, 21;
Campbell Aff. ¶¶ 3-4.) Furthermore, Fuzion exhibited the UFC
Broadcast at its establishment despite not having a license or
permission to do so. (Compl. ¶ 24; Campbell Aff. ¶¶ 7-8, Ex. A;
Hand Aff. ¶ 5.) Pursuant to 17 U.S.C. § 106(5), a copyright
holder has the exclusive right to display the copyrighted work
publicly. Therefore, Plaintiff has shown ownership and the
violation of an exclusive right, and thus Plaintiff has

established all of the elements necessary for a copyright infringement claim against Fuzion.

Plaintiff also seeks to hold Malik vicariously liable for the infringing activities of Fuzion. (Compl. ¶ 46; Mot. Default J. at 1; Mem. Supp. at 21-24.) An individual can be found to have infringed a copyright based on the acts of another. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) (recognizing secondary liability under the Copyright Act). For vicarious liability to exist, a defendant must possess the right and ability to supervise the infringing conduct, and the defendant must have an obvious and direct financial interest in the exploitation of copyrighted material. See EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 507 (E.D. Va. 2009). Here, Plaintiff has established that Malik is responsible for the operation, management, and supervision of Fuzion. (Compl. ¶¶ 8, 11, 13.) Plaintiff has also established by affidavit that Fuzion advertised and exhibited the UFC Broadcast to attract customers, presumably increasing its general business and profits. (Campbell Aff. ¶¶ 8, 10, Exs. A, C-D.) Furthermore, Plaintiff has established that Malik has a direct financial interest in Fuzion, and therefore a direct financial interest in the infringing of the UFC Broadcast. (Compl. ¶ 12.) Consequently, Plaintiff has supported its copyright infringement claim against Malik individually.

IV. <u>REQUESTED RELIEF</u>

Plaintiff alleges that Defendants violated both the Communications Act and the Copyright Act through the unauthorized exhibition of the UFC Broadcast, and Plaintiff moves the Court to enter default judgment against Defendants and award it damages.

With regards to the Communications Act, Plaintiff cannot recover under both Sections 553 and 605, despite having proven a violation of both sections. <u>See</u> <u>Wing Spot Chicken & Waffles</u>, 920 F. Supp. 2d at 666. Acknowledging the limitation on double recovery, Plaintiff has elected to recover under Section 605 and seeks statutory damages, enhanced statutory damages due to willfulness, and attorneys' fees and costs. (Mem. Supp. at 10, 23-24.) As a "person aggrieved" by a violation of Section 605, Plaintiff may be granted injunctive relief and/or damages, and must be granted reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(i)-(iii). The Court may award either actual damages suffered as a result of the violation and any profits attributable to the violation, or statutory damages of not less than $1,000.00 and not more than $10,000.00. <u>Id.</u> § 605(e)(3)(C)(i)(I)-(II).

With regards to Defendants' violation of the Copyright Act, Plaintiff seeks statutory damages and attorneys' fees and costs.

(Mem. Supp. at 24.)[2] In a case of copyright infringement, the copyright owner may elect to recover actual damages and profits or may elect "an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). Statutory damages may total "with respect to any one work ... a sum of not less than $750 or more than $30,000 as the court considers just." Id. Upon a finding of willful infringement, the Court "may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). The Copyright Act also authorizes recovery of full costs and an award of reasonable attorneys' fees to the prevailing party in a Copyright Action. Id. § 505.

The undersigned considers Plaintiff's request for Section 605 statutory damages, Section 605 enhanced statutory damages, Copyright Act statutory damages, and attorneys' fees and costs in turn below.

---

2. Plaintiff phrases its request for statutory damages under the Copyright Act as first seeking statutory damages and then seeking enhanced statutory damages for willfulness. (Mot. Default J. at 1-2; Mem. Supp. at 16-21.) This is parallel language to how Plaintiff requests damages under Section 605. (Mot. Default J. at 1-2; Mem. Supp. at 12-16.) However, courts in this District have considered and awarded statutory damages under the Copyright Act as one type of damages, not two, even when unlawful acts are willful. See, e.g., EMI April Music, 618 F. Supp. 2d at 508-09 (awarding a total amount of Copyright Act statutory damages without allocating some as mere statutory damages and some as enhanced statutory damages for willfulness). This is different than how courts in this District have awarded damages under Section 605. See, e.g., Wing Spot Chicken & Waffles, 920 F. Supp. 2d at 666-69 (first awarding Section 605 "statutory damages"; then awarding Section 605 "willful damages"). Therefore, the undersigned considers Plaintiff's request for statutory damages to be for a total of $15,000.00 in statutory damages, not $5,000.00 for statutory damages and $10,000.00 for enhanced statutory damages.

## A. Section 605 Statutory Damages

In moving for a default judgment, Plaintiff seeks statutory damages in the amount of $5,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). (Mot. Default J. at 1-2; Mem. Supp. at 23-24.) Courts in this District have employed two general approaches to calculating Section 605 statutory damages: either by utilizing a flat damage amount usually based on the unpaid licensing fee, or by basing the damages calculation on the number of patrons in an establishment during the unauthorized broadcast. See Wing Spot Chicken & Waffles, 920 F. Supp. 2d at 667 (summarizing various cases' calculations of Section 605 damages); see also, e.g., J & J Sports Prods., Inc. v. Lesly Rest. Inc., No. 1:16cv620, 2016 WL 6138429, at *5 (E.D. Va. Sept. 28, 2016) [hereinafter Lesly Rest. II] (awarding $3,000.00 in statutory damages, which was equal to the approximate number of patrons present during exhibition multiplied by $100.00); J & J Sports Prods., Inc. v. Lesly Rest., Inc., No. 1:15-cv-01537, 2016 WL 8679238, at *5 (E.D. Va. Aug. 19, 2016) [hereinafter Lesly Rest. I] (awarding $2,200.00 in statutory damages, which was equal to the unpaid sublicense fee).

Here, Plaintiff has stated that the licensing fee that Defendants would have paid to lawfully exhibit the UFC Broadcast at their establishment amounted to $2,250.00. (Hand Aff. ¶ 6.) Plaintiff has not submitted specific data regarding the number

of patrons in the establishment during the UFC Broadcast, and has only submitted the establishment's potential occupancy of 51-100 occupants. (Compl. ¶ 14; Campbell Aff. ¶ 8, Ex. A.) Therefore, the undersigned finds that an award of $2,250.00, the equivalent to the unpaid licensing fee, is appropriate as statutory damages in this case.

## B. Section 605 Enhanced Statutory Damages

Plaintiff also seeks enhanced damages for willfulness in the amount of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Mot. Default J. at 1-2; Mem. Supp. at 23-24.) If the Court finds that a defendant's violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain" the Court may increase the amount of actual or statutory damages by an amount of not more than $100,000.00. 47 U.S.C. § 605(e)(3)(C)(ii).

To evaluate whether enhanced damages are appropriate, courts "have considered 'factors such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks.'" Wing Spot Chicken & Waffles, 920 F. Supp. 2d at 668 (quoting Kingvision Pay-Per-View Ltd. v. Villalobos, 554 F. Supp. 2d 375,

383 (E.D.N.Y. 2008)). Courts have also considered "the number of patrons who viewed the unlawful broadcast, the establishment's proximity to a population center, and the effect the damage award might have on the defendant's ability to remain in business." Joe Hand Promotions, Inc. v. Citibars, Inc., No. 2:11cv58, 2012 WL 503212, at *6 (E.D. Va. Feb. 8, 2012). Additionally, courts routinely decline to award the maximum in enhanced damages and generally award significantly less. J & J Sports Prods., Inc. v. Brutti's LLC, No. 2:14CV269, 2014 WL 7363823, at *9 (E.D. Va. Dec. 23, 2014). However, the enhanced damages awarded in this District against non-repeat offenders vary greatly. See, e.g., id. (citing cases awarding $6,000.00, $12,000.00, $27,000.00, and $100,000.00, and ultimately awarding $25,000.00).

To support its request for $10,000.00 in enhanced damages for willfulness, Plaintiff argues that signal piracy is per se intentional because it cannot occur without the intentional modification of electronic equipment, the removal of devices designed to prevent unauthorized exhibition, or other willful acts. (Mem. Supp. at 14.) Plaintiff states that signal piracy harms its business through both the loss of licensing proceeds and the inherent loss of product value when its programs become more widely disseminated than intended. (Campbell Aff. ¶¶ 12-13; Mem. Supp. at 14.) Further, Plaintiff asserts that it has

expended significant sums of money to combat piracy of its programs, such as the UFC Broadcast, in order to deter further signal piracy. (Campbell Aff. ¶ 13; Mem. Supp. at 14-15.)

Defendants' violation of Section 605, taking place in a commercial establishment rather than a residence, was committed for purposes of direct or indirect commercial advantage. The pleadings make clear that such interception cannot be done accidentally or innocently. An award of some enhanced damages is therefore appropriate as a deterrent. The maximum allowable enhanced damages award is inappropriate when the evidence before the Court suggests that Defendants' commercial gain resulting from the unauthorized broadcast was likely not significant.

Here, Fuzion had advertised its exhibition of the UFC Broadcast on their Facebook.com page. (Campbell Aff. ¶ 10, Ex. D.) Fuzion's establishment is located in Springfield, Virginia, a generally populous area. (Compl. ¶¶ 8-11.) However, Plaintiff has not provided any evidence of Fuzion's repeated violations of Section 605. Further, while Plaintiff speculates that Fuzion received some financial benefit from exhibiting the UFC Broadcast, Plaintiff provides no specific information on such benefits. (Mem. Supp. at 4.) Plaintiff's independent auditor did not pay a cover charge to enter Fuzion's establishment, and no evidence exists that Fuzion charged other patrons a cover charge. (Campbell Aff. ¶ 10, Ex. A.) No evidence exists that

Fuzion charged a premium for food or drink.

The undersigned finds that Fuzion's actions were willful and done for direct or indirect commercial advantage and that Plaintiff is thus entitled to enhanced damages in the amount of $10,000.00, as requested by Plaintiff. This award represents an amount in the middle of the spectrum of enhanced damages recently awarded by this Court under similar facts. See Lesly Rest. II, 2016 WL 6138429, at *6 (awarding $10,000.00 in enhanced statutory damages); Lesley Rest. I, 2016 WL 8679238, at *6 (awarding $10,000.00 in enhanced statutory damages); Brutti's LLC, 2014 WL 7363823, at *9 (awarding $25,000.00 in enhanced statutory damages); Joe Hand Promotions, Inc. v. Sliders Sports Lounge, LLC, No. 2:14cv20, 2014 WL 4444251, at *6 (E.D. Va. Sept. 9, 2014) (awarding $15,000.00 in enhanced statutory damages); J & J Sports Prods., Inc v. After Six Prods., Inc., No. 3:13-CV-591, 2014 WL 644400, at *5 (E.D. Va. Feb. 19, 2014) (awarding $15,000.00 in enhanced statutory damages); Innovative Sports Mgmt., Inc. v. Adriana, Inc., No. 1:13cv1279, 2014 WL 1491339, at *6 (E.D. Va. Feb. 3, 2014) (awarding $5,000.00 in enhanced statutory damages). The combination of $2,250.00 in statutory damages and $10,000.00 in enhanced damages both compensates Plaintiff and serves as a deterrent to future signal piracy by Defendants and others.

## C. Copyright Act Statutory Damages

Plaintiff seeks $15,000.00 in statutory damages for Defendants' willful infringement of its copyright over the UFC Broadcast. (Mot. Default J. at 1-2; Mem. Supp. at 18-20, 24.) In similar cases, courts in this District have held that a statutory damages award between two and three times the amount of licensing fees that a plaintiff would have received is appropriate. See, e.g., EMI April Music, 618 F. Supp. 2d at 508-09 (awarding statutory damages for a willful copyright infringement equal to approximately two times the licensing fee); see also Sailor Music v. IML Corp., 867 F. Supp. 565, 570 (E.D. Mich. 1994) (awarding statutory damages based on "a survey of statutory awards throughout the country, all of which indicate that the courts typically award three times the amount of a properly purchased license for each infringement").

Plaintiff would have received $2,250.00 if Defendants had properly bought a license to exhibit the UFC Broadcast. (Hand Aff. ¶ 6.) Therefore, Plaintiff's request of $15,000.00 in total statutory damages constitutes slightly more than six and a half times the amount of the unpaid licensing fee. This amount of damages would be more disproportionate than larger, recent awards for similar instances of copyright infringement in this District. See, e.g., Broad. Music, Inc. v. Eatnout, LLC, No. 2:15cv254, 2015 WL 12803458, at *3 (E.D. Va. Dec. 29, 2015)

(awarding statutory damages equal to slightly less than four and half times the licensing fee). Therefore, the undersigned finds that an award of $6,000.00 is appropriate as statutory damages in this case, because it is between two and three times the amount of the unpaid licensing fee.

### D. Attorneys' Fees and Costs

Plaintiff seeks to recover $4,464.50 in attorneys' fees and costs. (Mot. Default. J. at 2; Hufnagel Aff. ¶¶ 8-9; Mem. Supp. at 24.) The amount sought is based on $3,494.50 in total attorney's fees, which is comprised of 9.0 hours of labor by attorney Christopher J. Hufnagel at the hourly rate of $250.00 and 13.1 hours of labor by various paralegals and legal assistants at the hourly rate of $95.00. (Hufnagel Aff. ¶¶ 8-9.) The amount sought also includes $970 in costs. (Id.) In support of its request, Plaintiff submitted an itemized chart of the legal services performed, which details the work done, hours expended, and total amount due. (Id. ¶ 9.)

The undersigned has reviewed the requested attorneys' fees and costs finds that they are reasonable compensation for the time expended to enforce Plaintiff's rights. Therefore, the undersigned recommends that Plaintiff be awarded $3,494.50 in attorneys' fees and $970.00 in costs. If further action is required to enforce and collect this judgment, Plaintiff may apply to this Court or to the court in which enforcement is

sought for reasonable attorneys' fees and costs in addition to those set out in this Report and Recommendation.

## V. <u>RECOMMENDATION</u>

For the reasons stated above, the undersigned recommends default judgment against Defendants Fuzion and Malik, with Defendants being held jointly and severally liable for damages. Specifically, the undersigned recommends Plaintiff should recover $12,250.00 in damages pursuant to Section 605, $6,000.00 in damages pursuant to the Copyright Act, and $4,464.50 in attorneys' fees and costs.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendants at the following addresses:

Khurram Malik
2264 York Drive, Apt. 411
Woodbridge, Virginia 22191

Fuzion Café LLC
6400A Commerce Street
Springfield, Virginia 22150

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 4th, 2017
Alexandria, Virginia